John **GREEN** Appellant

v.

**AMERICA ONLINE (AOL);**
John Does 1 & 2

No. 01–1120.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit LAR
34.1(a) Nov. 15, 2002.

Filed Jan. 16, 2003.

---

John Green, Edison, Appellant, pro se.

Samir C. Jain, Wilmer, Cutler & Pickering, Washington, for Appellee.

Before SLOVITER, RENDELL and ROSENN, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

The primary issue raised in this appeal, one of first impression in this court, is whether American Online, Inc. (AOL), a provider of interactive computer services, is statutorily immune from liability from causes of action arising from third party content. The plaintiff, John Green, sued AOL and John Does 1 and 2 in the Superior Court of New Jersey. In his one hundred and ten paragraph pro se amended complaint, aptly described by the District Court as "not especially clear," the plaintiff alleges that AOL negligently failed to live up to its contractual obligations to Green by refusing to take necessary action against John Does 1 and 2, who allegedly transmitted harmful online messages to Green and others.

Green named AOL as an additional defendant, claiming that the messages were transmitted during the course of conversations carried on through the AOL international work service. Because Green amended his complaint in the state court, adding a claim that AOL violated his First Amendment rights, AOL removed the case to the District Court for the District of New Jersey. The District Court denied Green's motion to remand to the state court. AOL moved to dismiss all claims against it on the ground that it was statutorily immune from all tort claims against it relating to the John Doe defendants' messages by virtue of the provisions of 47 U.S.C. § 230. The District Court granted AOL's motion.[1] Green timely appealed from the order denying his motion to remand to the state court and from the order dismissing his claims against AOL. We affirm.

1. The District Court entered an order remanding the pendant state claims to the New Jersey State Court, an exercise of its discretionary authority to decline to retain supplemental jurisdiction over the non-dismissed counts and to remand them under 28 U.S.C. § 1367(c)(3). This appeal, therefore, is from a final order of the District Court.

## I.

Undisputed by the parties, AOL is the world's largest interactive computer service with over 2.2 million members. It provides its millions of subscribers information that is only available though its international network of interconnected computers and services, and access to the public Internet. (117–18A). It also provides or enables, *inter alia*, a number of online communications tools, such as e-mail, news groups, and chat rooms, that allow its subscribers to communicate with one another and with other users of the Internet. (*Id.*)

A subscriber to AOL must agree to the terms of its Member Agreement, which requires subscribers to adhere to AOL's standards for online speech and conduct set forth in AOL's "Community Guidelines." Green subscribed to AOL using the screen name "Lawyerkill." A screen name is commonly used by persons when communicating through an online service such as AOL. The other two defendants, John Doe 1 and John Doe 2, allegedly were also AOL subscribers adopting the screen names "LegendaryPOLCIA" and "Lawyerkiii," respectively. (116A) "Lawyerkiii" appears as "Lawyerkill" when the letter "i" is capitalized.

Green's amended complaint alleges that the John Doe defendants transmitted certain content in the AOL chat room "Romance—New Jersey over 30." Chat rooms are a modern-day analog to yesteryear's telephone party lines and allow individual parties to "talk" to as many as twenty-three other parties at one time. The first chat room incident of which Green complaints involved John Doe 1, who allegedly entered the chat room conversation under the screen name "LegendaryPOLCIA." (121A) Green alleges that John Doe 1 "sent a punter through AOL, which caused Green's computer to lock up and Green had to restart his computer." Green's complaint describes a "punter" as a computer program created by a hacker whose purpose is to halt and disrupt another computer. Upon restarting his computer and entering the chat room where the punter had been delivered, Green learned that "LegendaryPOLCIA" claimed credit for producing what he called the "blue screen of death." Green alleges that he lost five hours of work restarting his computer, causing him damages of approximately $400.

Green also alleges that he and unidentified others reported John Doe 1 to AOL who informed him that they would take no action unless he provided evidence that "LegendaryPOLCIA" sent the destructive signal. Green alleges that he provided additional evidence to AOL but it took "no effective action to stop 'LegendaryPOLCIA.'" The amended complaint alleges other online episodes in which "LegendaryPOLCIA" (John Doe 1) and "Lawyerkiii" (John Doe 2) allegedly defamed and inflicted emotional distress on Green. First, the complaint alleges that "LegendaryPOLCIA" defamed Green by typing the messages "SHELLS CAREFUL LAWYER IS BI" and "LAWYER NO IMS FOR GAY SEX THX:))" in a chat room titled "Romance—New Jersey over 30." Green alleges that he faxed AOL a log of the chat room showing "LegendaryPOLCIA" defaming him but AOL did nothing to stop it. The complaint also alleges that on two occasions "LawyerKiii" impersonated Green entering a chat room and "asking guys in the chat room for gay sex." The complaint also purported to plead a general negligence claim against AOL for failure to police its services.

There were also allegations that AOL's Community Guidelines violated Green's First Amendment rights because they required Green to adhere to them when he

used AOL service to access the Internet. Green further alleged that AOL violated the New Jersey Consumer Fraud Act by filing legal actions against third parties for sending unlawful bulk, unsolicited e-mail (commonly known as "Spam") to AOL subscribers and by blocking access to unspecified "internet newsgroups."

The complaint demanded a total of $400 in compensatory damages from AOL and the two John Doe plaintiffs and unspecified punitive damages. It also sought injunctive relief to enjoin AOL from restricting Green's ability to send and obtain information on the Internet when using AOL's services.

■ The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We exercise plenary review over the District Court's order denying Green's motion for remand. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 665 (3d Cir.2002).[2] Our review of a decision to grant a Rule 12(b)(6) motion is plenary. *Weston v. Pennsylvania*, 251 F.3d 420, 425 (3d Cir. 2001). We accept all factual allegations in the complaint as true, and we draw all reasonable inferences in the light most favorable to the plaintiff. *Id.* We will affirm only if no relief could be granted under any set of facts the plaintiff could prove. *Id.*

■ We agree with the District Court's reasoning and conclusion with respect to Green's motion to remand the case to state court. Green alleged in Count Twelve of his Amended Complaint that AOL's Community Guidelines abrogate his freedom of speech and violate his First Amendment rights. This is a clear invocation of federal question jurisdiction under 28 U.S.C. § 1331. Removal thus was proper under 28 U.S.C. § 1441. *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997). Green argues that the removal was defective because the John Doe defendants did not join the notice of removal. However, the general rule that all defendants must join in a notice of removal may be disregarded where, as here, the non-joining defendants are unknown. *Balazik v. County of Dauphin*, 44 F.3d 209, 213 n. 4 (3d Cir.1995).

■ We also agree that Green's tort claims are subject to AOL's immunity under 47 U.S.C. § 230. Section 230 provides, in pertinent part, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 also provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3). There is no dispute that AOL is an interactive computer service as defined in 47 U.S.C. § 230(f) or that the relevant content originated not from AOL but from "another information content provider." 47 U.S.C. § 230(c)(1). The only question, then, is whether holding AOL liable for its alleged negligent failure to properly police its network for content transmitted by its users – here, the "punter" signal and the derogatory comments – would "treat" AOL "as the publisher or speaker" of that content. We agree with the District Court that it would.

**2.** A remand to a state court expressly pursuant to 28 U.S.C. § 1447(c), which allows a District Court to decline to exercise supplemental jurisdiction over claims when it appears that it lacks subject matter jurisdiction, is unreviewable on appeal under 28 U.S.C. § 1447(d). However, in this case the District Court did not expressly remand pursuant to § 1447(c); remand appears to have been discretionary and thus reviewable under 28 U.S.C. § 1367(c)(3). *See In re U.S. Healthcare, Inc.*, 193 F.3d 151, 159 (3d Cir.1999).

■ By its terms, § 230 provides immunity to AOL as a publisher or speaker of information originating from another information content provider. The provision "precludes courts from entertaining claims that would place a computer service provider in a publisher's role," and therefore bars "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content." *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir.1997); *see also, e.g., Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 986 (10th Cir.2000) ("Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions.").

There is no real dispute that Green's fundamental tort claim is that AOL was negligent in promulgating harmful content and in failing to address certain harmful content on its network. Green thus attempts to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network – actions quintessentially related to a publisher's role. Section 230 "specifically proscribes liability" in such circumstances. *Zeran*, 129 F.3d at 332–33.

■ Green disputes that the "punter" computer program sent to him by "LegendaryPOLCIA" constitutes "information" within the meaning of the statute.[3] He argues that the statute's use of the term "information" is restricted to "communication or reception of knowledge or intelligence, and not an unseen signal that halts someone's computer," and that Congress would have defined the term more technically if it had intended anything beyond

the word's most common meaning. We disagree; the District Court correctly interpreted the word "information." Noting that the dictionary includes "signal" as a definition of "information," the District Court concluded that the narrow interpretation offered by Green to hold AOL liable for Green's reception of the punter signal or program would run afoul of the intention of section 230. *See United States v. Loney*, 219 F.3d 281, 285 (3d Cir.2000) (in construing a statutory term, the bare meaning of the word is considered with its placement and purpose in the statutory scheme). We agree with the District Court that section 230 immunizes AOL in this circumstance.

Green appears to argue that AOL waived its immunity under section 230 by the terms of its membership contract with him and because AOL's Community Guidelines outline standards for online speech and conduct and contain promises that AOL would protect Green from other subscribers. However, as the District Court determined, the Member Agreement between the parties tracks the provisions of section 230 and provides that AOL "does not assume any responsibility" for content provided by third parties. Though AOL reserved the right to remove messages deemed not in compliance with the Community Guidelines, it expressly disclaimed liability for failure or delay in removing such messages. The District Court, therefore, rejected Green's waiver and estoppel arguments. Instead, it concluded that AOL made no false representation and actually complied with the Member Agreement.

■ Green also appears to argue that the first five pages of the Member Agree-

---

**3.** Green does not dispute that the John Doe defendants are "information content providers," or that the messages they transmitted in the chat rooms constitute "information," within the meaning of the statute.

ment (where the disclaimers of liability are found) are void for lack of consideration. However, Green concedes that having read the agreement, he decided to become a member of AOL and continue to use its service beyond a free-trial period. The consideration Green received was his membership and use of AOL's services.

■ Green next contends that section 230 contravenes the First Amendment because it "allows a provider to restrict any material including constitutionally protected material." Section 230(c)(2) immunizes from liability providers and users of interactive computer service who voluntarily make good faith efforts to restrict access to material they consider to be objectionable, for example, "obscene," "excessively violent," or "harassing." Green's contention lacks merit. Section 230(c)(2) does not *require* AOL to restrict speech; rather it allows AOL to establish standards of decency without risking liability for doing so.[4] Accordingly, the District Court properly dismissed Green's tort claims as barred by § 230.

■ We also agree with the District Court's conclusion that Green failed to state a claim for breach of contract, because "[T]he plain language of the Member Agreement forecloses any claims that AOL breached its obligations." Green contends that AOL breached the terms of the Community Guidelines when it failed to take action against John Does 1 and 2. However, by their terms, the Member Agreement and Community Guidelines were not intended to confer any rights on Green and AOL did not promise to protect Green from the acts of other subscribers. Con-

cerning Green's claim that AOL breached the implied covenant of good faith and fair dealing, *i.e.*, that AOL failed to act in good faith to perform the terms of their contract (meaning the Community Guidelines), we add that this claim fails in light of the explicit agreement of the parties as stated above.

■ Furthermore, Green's claims that AOL's Community Guidelines violated his First Amendment right to free speech are meritless. AOL is a private, for profit company and is not subject to constitutional free speech guarantees. It is a fee-based Internet service provider that runs a proprietary, content-based online service. We are unpersuaded by Green's contentions that AOL is transformed into a state actor because AOL provides a connection to the Internet on which government and taxpayer-funded websites are found, and because AOL opens its network to the public whenever an AOL member accesses the Internet and receives email or other messages from non-members of AOL. *See Lloyd Corp. v. Tanner*, 407 U.S. 551, 569, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) (private property does not lose its private character merely because the public is generally invited to use it for designated purposes). Green's argument under the New Jersey constitution fails as well because AOL's service is not sufficiently "devoted to public use" under the factors of *New Jersey v. Schmid*, 84 N.J. 535, 423 A.2d 615 (1980).

■ Lastly, Green contends that the District Court erred in holding that AOL did not violate the New Jersey Consumer Fraud Act (NJCFA), *N.J. Stat.*

---

**4.** Green also argues that section 230(c)(2) runs afoul of the Commerce Clause by allowing AOL to control interstate commerce. It does not appear that Green raised this argument to the District Court, and we need not consider it for the first time on appeal. *Ross* *v. Hotel Employees & Rest. Employees Int'l Union*, 266 F.3d 236, 242 (3d Cir.2001). We note, however, that in passing the legislation that became section 230, Congress properly exercised its power to regulate interstate commerce. *See Zeran*, 129 F.3d at 334.

*Ann.* §§ 56:8–1, *et seq.* In the District Court, Green contended, as he seems to argue on appeal, that AOL committed consumer fraud because after promising its users unlimited Internet access and e-mail, it sued outside companies to prevent them from sending objectionable or unlawful e-mail. The NJCFA, 56:8–2, provides that deception, fraud, or any unconscionable commercial practice are among the practices declared to be unlawful. "Unconscionable" implies conduct that lacks "good faith, honesty in fact, and observance of fair dealing." *Gennari v. Weichert Co. Realtors,* 288 N.J.Super. 504, 533, 672 A.2d 1190 (App.Div.1996). The District Court held that AOL did not act unconscionably and that its Member Agreement was not dishonest or entered into in bad faith. It found that AOL exercised its rights on several occasions under the Member Agreement to prevent unsolicited bulk e-mail from entering or utilizing the network "to protect its members from materials it considered objectionable to its subscribers – hardly unconscionable actions." In addition, the District Court concluded that § 230(c)(2) provided AOL with immunity for this alleged activity because it protects an interactive computer service from liability for "any action voluntarily taken in good faith to restrict access or availability of material that the provider or user considers to be ... objectionable." We see no error in the District Court's finding or its disposition of Green's claim under the NJCFA.

## II.

Accordingly, the District Court's orders denying Green's motion to remand, and dismissing all counts of the complaint against AOL will be affirmed.