**Supplementmarket.com, Inc. v. Google, Inc.**

C.P. of Montgomery County, no. 09-43056.

*Domenic Tricome*, for appellant.
*Amy B. Ginensky,* for appellees.

DEMCHICK-ALLOY, *J.*, July 26, 2010—Plaintiff appeals from this court's order filed July 13, 2010, granting defendant's preliminary objection and dismissing plaintiff's complaint with prejudice.

## FACTS

Plaintiff commenced the instant lawsuit by filing a complaint in which it sought to recover damages from defendant, Google, Inc. ("Google"). Paragraphs eight and eleven, and exhibit "E" attached to plaintiff's complaint, admit that Google runs a web site and an internet search engine. The complaint alleges that plaintiff incurred damages because Google failed to delete, upon plaintiff's demand, allegedly libelous statements "on the defendant's web site." (See complaint, ¶8.) Exhibits "B" and "E" attached to plaintiff's complaint show that the statements on Google's web site were originally posted on the Usenet

[1]discussion group "alt.sport.bodybuilding."[2]

Google filed preliminary objections in the nature of a demurrer and a motion to strike the complaint based on section 509 of the "Communications Decency Act," which is indexed at 47 U.S.C. § 230.[3] Defendant argued that the act rendered it immune from claims based upon publication of information or refusal to remove information from its web site. This court agreed, sustained the preliminary objections and dismissed the complaint with prejudice. The instant appeal followed.

## DISCUSSION

Subsection (c)(1) of the Communications Decency Act states: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Subsection (1)(3) of the act defines "information content provider" as "any person or entity that is responsible...for the creation or development of information provided through the internet...." 47 U.S.C. § 230(1)(3).[4] Because plaintiff's complaint pleads that

1. The Usenet is a decentralized computer network communications by which persons exchange messages on various topics. See generally Genan Zilkha, "The RIAA's Troubling Solution to File Sharing," 20 Fordham Intellectual Property, Media and Entertainment Law Journal 667, 670 (2010); Lauren Gelman, "Privacy, Free Speech and "Blurry Edged' Social Networks;" 50 Boston College Law Review 1315, 1320-22 (2009).

2. Google maintains computer "archives" of the messages posted on the Usenet. See generally Peter B. Maggs, "Free Legal Advice on the Internet," 34 International Journal of Legal Information 483, 485 (2006).

3. This court did not address, sua sponte, the problem that plaintiff, a business corporation, was not represented by a lawyer.

4. The statute appears to have used the term "provider" in subsection (c)(1) so that its protection would apply to information content providers as well as "access software providers," a term that is

the allegedly libelous statements that form the basis of the complaint are "on the defendant's web site," the undisputed facts of record support the conclusion that Google is an "information content provider" as that term is defined in the act, and as such, may not be treated as the publisher of information provided by another. Exhibits "B" and "E" attached to plaintiff's complaint show that the statements of which plaintiff complains were originally posted on the Usenet discussion group "alt.sport.bodybuilding" before being archived on Google's web site. Therefore, the exhibits attached to plaintiff's complaint support the conclusion that the statements that form the basis of plaintiff's complaint are "information provided by another information content provide" under subsection (c)(1) of the act.

Having established that Google's conduct is protected by the act, one must inquire whether the act preempts plaintiff's claim insofar as it may be cognizable under Pennsylvania law.

> [F]ederal law is paramount. More specifically, Article VI, cl. 2, of the United States Constitution, the Supremacy Clause, provides that the laws of the United States "shall be the supreme Law of the Land;... any thing in the constitution or laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, according to the United States Supreme Court, laws that are in conflict with federal law are "without effect." *Altria Group, Inc. v. Stephanie Good*, — U.S. —, 129 S.Ct. 538, 543, 172 L.Ed.2d 398, — (2008)

---

defined in subsection (f)(4), but which is relevant here only insofar as to clarify the ambiguity created by the failure of subsection (c)(1) to use the term "information content provider."

(quoting *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)).

\* \* \*

In determining the breadth of a federal statute's preemptive effect on state law, we are guided by the tenet that "the purpose of congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine,* — U.S. —, —, 129 S.Ct. 1187, 1194, 173 L.Ed.2d 51 (2009) (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Congress may demonstrate its intention in various ways. It may do so through express language in the statute (express preemption). Yet, even if a federal law contains an express preemption clause, the inquiry continues as to the substance and the scope of congress' displacement of the state law. *Altria Group, Inc.,* 129 S.Ct. at 543.

*Dooner v. DiDonato,* 601 Pa. 209, 218-219, 971 A.2d 1187, 1193 (2009).

Subsection (e)(3) of the act states, "no cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. §230(e)(3). Assuming that the Constitution of the United States gives Congress the power to enact subsection (c)(1) as a regulation of interstate commerce, subsection (e)(3) expressly preempts state law insofar as plaintiff could maintain any cause of action against Google based upon Google's role as a publisher or speaker of information. Plaintiff's complaint is based solely upon such a cause of action, hence it fails to state a cognizable

claim as a matter of law.

## CONCLUSION

Upon consideration of the foregoing discussion, the undersigned respectfully submits that the order filed July 13, 2010 should be affirmed.

## COMPLAINT

Supplementmarket.com, Inc., hereinafter referred to as "plaintiff," for its complaint against the defendant, Google Inc., hereinafter referred to as "defendant," hereby states the following information and belief:

1. Plaintiff seeks recovery in fraud, negligence, gross negligence, libel and defamation, harassment and negligent infliction of emotional distress.

2. Pursuant to 13 Pa. Cons. Stat. § 2301, plaintiff brings this lawsuit to recover losses, costs, and attorneys' fees he has incurred and will continue to incur as a result of the defendant's actions, as set forth herein.

## PARTIES

3. Plaintiff is a corporation in Pennsylvania with a corporate address of 649 South Henderson Road, Suite A508B, King of Prussia, Pennsylvania 19406-3568.

4. Defendant is a corporation in California with a business address of 1600 Amphitheatre Parkway, Mountain View, CA 94043-1351.

## VENUE[5]

_____

5. As this court is well aware, when deciding motions to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3), courts consider

5. Venue is proper in this judicial county because a substantial part of the events or omissions giving rise to the cause of action occurred in Montgomery County, Pennsylvania.

6. Plaintiff's owner is severely disabled. [6] Defendant's actions are very negatively impacting.

7. In considering a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court must generally accept as true the allegations in the complaint, unless contradicted by defendant. *Holiday v. Bally's Park Place, Inc.*, 2007 U.S. Dist. LEXIS 66554, 2007 WL 2600877, at *1 (E.D. Pa. Sept. 10, 2007). "The court may examine facts outside the complaint to determine proper venue, but must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 U.S. Dist. LEXIS 23839,2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005); accord *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) ("whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff."). As plaintiff's owner is essentially homebound due to his disability, all of plaintiff's owner's contact and

the factual allegations in the light most favorable to the non-moving party and thus, must accept as true the allegations in plaintiff's complaint, see *Leone v. Cataldo*, 574 F.Supp.2d 471, 483 (E.D.Pa. 2008).

6. Plaintiff's owner suffers from severe Chronic Fatigue and Immune Dysfunction Syndrome, a recognized disability by the United States Social Security Administration. See www.ssa.gov/disability/professioals/cfspub063.htm. Indeed, plaintiff's owner, who is only forty-nine (49) years of age, is so debilitated that he qualifies and receives Social Security disability benefits due to his illness. Please see Exhibit "A" attached hereto, plaintiff's Notice of Award from the Social Security Administration.

communications with defendants occurred in plaintiff's owner's home in Pennsylvania.

## FACTS

8. The plaintiff noticed libel of the plaintiff on the defendant's web site. The plaintiff contacted the defendant by fax to remove the libel. Please see Exhibit B. The plaintiff also called the defendant to remove the libel. Please see Exhibit C. The plaintiff also used the defendant's web mail to tell the defendant to remove the libel. The defendant did not remove the libel. The plaintiff thought that the defendant had removed it, because the defendant is one of the biggest and most recognizable companies in the world. One would think that they would be responsible and ethical, and do the legally right thing.

The plaintiff feels compelled to give an example of the type of work they do. Exhibit D gives an example. The plaintiff's owner, Domenic Tricome, is mentioned.

The famous precedent is *Cohen v. Google* (the defendant). Once the defendant is notified by the plaintiff, the defendant is required to at least contact the libeler for their side of the story to investigate if the post is libel. After the defendant determines the post is libel, the defendant is required to remove the post, and give the plaintiff the contact information of the libeler.

Please note that situations and events like this one forced the plaintiff's owner to eventually sell the company at a very low price in July 2008. This situation with the defendant helped cause an incredible amount of pressure on the plaintiff's staff and owner. Running a business can

be hard enough without having to deal with the defendant's negligence.

9. The plaintiff contacted the defendant again for a last final warning, before filing this lawsuit. Please see Exhibit E.

10. The defendant knows very well given the very public, precedent setting case, *Cohen v. Google* (2,050,000 hits on the defendant's web site search), their responsibility in matters of libel. The defendant's business has been affected by the laws written arguably for and by them concerning the internet. The defendant is by far the biggest company in this industry. They are a phenomenon. They are in the forefront of many things on the internet including litigation that is in the press almost weekly if not daily. The defendant knows exactly what is going on.

The defendant's behavior is negligent. They must be required to act in a responsible way, and not force victims to sue. Most people can't afford to sue, and/or do not know how to sue, which includes being scared of the process.

During or after interrogatories, this case may need to be changed to a class action.

11. Exhibit F shows the defendant's search engine is a monopoly. By many if not all accounts, the defendant's shareholders and executives have gotten rich on their return of investment of time and/or money. Most everyone uses the defendant's web site every day, which means that the defendant makes money due to mostly everyone. So, the defendant should be required to have a system for libel. The system should not be that expensive, so there should be no objection to it.

## COUNT I - FRAUD

12. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 11 inclusive as though same were more fully set forth herein at length.

13. The defendant uses the Communications Decency Act fraudulently. Please see Exhibit G.

14. Due to the defendant's fraudulent actions, the plaintiff has suffered money damages.

Wherefore, plaintiff, supplementmarket.com, Inc., respectfully requests that this court enter judgment in its favor and against defendant, Google, Inc., in an amount of Fifty Thousand Dollars ($50,000[7]), derived from count I with court costs, interest and reasonable attorney fees.

## COUNT II - NEGLIGENCE

15. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 14 inclusive as though same were more fully set forth herein at length.

16. The defendant knows that it is liable for the investigation of the libel. The defendant negligently refuses to do such.

17. Due to the defendant's negligence, the plaintiff has suffered money damages.

Wherefore, plaintiff, supplementmarket.com, Inc.,

---

7. The plaintiff is required to enter an amount with this complaint. The amount is at best a guess, and will be decided with a hearing or by the jury. The situation is a little complicated to begin with. The situation gets more complicated and worse with the passage of time. And, there is a large cost for a forensic expert, which makes sense for all parties to avoid.

respectfully requests that this court enter judgment in its favor and against defendant, Google, Inc., in an amount of Fifty Thousand Dollars ($50,000), derived from count II with court costs, interest and reasonable attorney fees.

## COUNT III - GROSS NEGLIGENCE

18. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 17 inclusive as though same were more fully set forth herein at length.

19. The defendant is grossly negligent by not taking down the posts and giving the plaintiff the contact information of the libeler.

20. Due to the defendant's gross negligence, the plaintiff has suffered money damages.

Wherefore, plaintiff, supplementmarket.com, Inc., respectfully requests that this court enter judgment in its favor and against defendant, Google, Inc., in an amount of Fifty Thousand Dollars ($50,000), derived from count III with court costs, interest and reasonable attorney fees.

## COUNT IV - LIBEL AND DEFAMATION

21. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 20 inclusive as though same were more fully set forth herein at length.

22. The defendant's negligence leads to the libeling and defaming of the plaintiff. The libel has caused financial loss of plaintiff's business, and has caused damage to the plaintiff's owner's personal well being.

23. Due to the defendant's libel and defamation, the

plaintiff has suffered money damages.

24. Wherefore, plaintiff, supplementmarket.com, Inc., respectfully requests that this court enter judgment in its favor and against defendant, Google, Inc., in an amount of Fifty Thousand Dollars ($50,000), derived from count IV with court costs, interest and reasonable attorney fees.

## COUNT V - HARASSMENT

25. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 24 inclusive as though same were more fully set forth herein at length.

26. The defendants' negligence is harassment, and has caused financial loss to the plaintiff, and has caused damage to the plaintiff's owner's personal well being.

27. Due to the defendant's harassment, the plaintiff has suffered money damages.

28. Wherefore, plaintiff, supplementmarket.com, Inc., respectfully requests that this court enter judgment in its favor and against defendant, Google, Inc., in an amount of Fifty Thousand Dollars ($50,000), derived from count V with court costs, interest and reasonable attorney fees.

## COUNT VI - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

29. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 28 inclusive as though same were more fully set forth herein at length.

30. The defendants are negligent by not investigating the libel.

31. The defendants breached said duty not investiga-

ting the libel.

32. The defendants actions are the proximate cause of the plaintiff's owner's emotional distress.

33. Although not constant, the plaintiff's owner has suffered severe emotional distress including depression, sleeplessness and paranoia as direct result of the defendant's conduct.

Wherefore, plaintiff, supplementmarket.com. Inc., respectfully requests that this court enter judgment in his favor and against defendant, Google, Inc., in an amount of Fifty Thousand Dollars ($50,000), derived from count VI with court costs, interest and reasonable attorney fees.

MEMORANDUM OF LAW IN SUPPORT OF THE PRELIMINARY OBJECTIONS OF DEFENDANT, GOOGLE INC., TO PLAINTIFF'S COMPLAINT

## II. INTRODUCTION

Plaintiff Supplementmarket.com, Inc. seeks to hold Google Inc. liable because Google did not remove third party messages, which plaintiff found objectionable, on a website hosted by Google. Plaintiff does not allege that Google itself, as an entity, uttered any statement regarding plaintiff, libelous or otherwise. As a result, plaintiff's claims are barred by section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230, which provides that an Internet service provider cannot be subjected to liability for content that others have created simply because such content is accessible through its service. This broad federal immunity requires the dismissal of plaintiff's complaint with prejudice.

## III. STATEMENT OF FACTS

Plaintiff alleges that there is "libel" on a message board archived and hosted by Google, and that Google did not remove this "libel" despite plaintiff's requests that it do so.[8] The content in question is apparently a message dated May 13, 2007 by a user named "Domineek Treecum" stating "[d]efinitely don't ever buy from SupplementMarket dot com. Rip off bastards[.]"[9] Plaintiff does not allege that Google itself uttered this statement or any other statement, libelous or otherwise, regarding the plaintiff.[10] Google Exh. A. It does allege that it complained to Google about the postings and in response Google refused to remove them, writing to him the following email:

> Thank you for your note. While we're sympathetic to your request, we're not able to help in this instance. Google is a provider of information, not a mediator. We make no claims about the content of the many posts in our archive. We suggest addressing your concern directly to the author of the post in question.
>
> We are not equipped to assess the truth or falsity of statements posted to our site by third parties. Instead, such determinations must be made by a court of law or

8. The message in question was accessed through the free Google Groups service. This service archives the Usenet, a global system of online bulletin boards that contain over 845 million messages. Using Google Groups, users have the ability to access, search and post messages to the Usenet archive. See, e.g., *Parker v. Google*, 242 Fed. Appx. 833, 834 (3d Cir. 2007).

9. The complaint does not attach a copy of this allegedly objectionable content, so a copy is attached hereto as Exhibit A (hereinafter "Google Exh. A").

10. In fact, the complaint states that Google is required to give plaintiff the "contact information for the libeler", thereby conceding that the content was created by a third party. Compl. ¶¶8 & 19.

other government entity. Accordingly, it is our policy, consistent with United States federal law (section 230(c) of the Communications Decency Act), not to remove postings that are alleged to be defamatory. If you choose to pursue legal action against this author, we are prepared to abide by any orders involving the postings in question.

In response to your request that we provide contact information of the list owner in relation to your complaint, unfortunately, we are unable to provide any information regarding our users unless we receive a valid third party subpoena or other appropriate legal notice in accordance with U.S. state and federal law.

Compl., Exh. G. Based upon Google's response and its refusal to remove the postings, plaintiff sued Google.

## IV. ARGUMENT

Plaintiff asserts state law tort claims for (1) fraud, (2) negligence, (3) gross negligence, (4) libel and defamation, and (5) harassment.[11] These claims arise out of third party content on an Internet website that plaintiff found objectionable, and for which plaintiff now seeks to hold Google responsible. Since each of these claims attempt to subject Google to liability for the statement of a third party, they are facially barred by the broad federal grant of immunity provided to Internet service providers under the Communications Decency Act. This complaint should therefore be dismissed with prejudice.

_____
11. Plaintiff fails to adequately plead the elements of these claims. However, because the claims are facially barred by the CDA, Google does not specifically address each of these claims in this brief.

A. *Congress Has Established A Broad Immunity For Internet Service Providers For Content Created By Third Parties*

The United States Congress recognized more than a decade ago that imposing liability on an Internet service provider for publishing third party content would stifle the growth of the Internet. In 1996, congress enacted the CDA largely in response to a decision, *Stratton Oakmont v. Prodigy Services, Co.*, 1995 WL 323710 (N.Y. App. Div. 1995), which found that online service providers could be held liable for the defamatory speech of their users. See *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101 (9th Cir. 2009). Section 230(c)(1) of the CDA effectively overruled *Stratton Oakmont.* Under Section 230(c)(1), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute immunizes Internet websites such as Google "from liability for publishing false or defamatory material so long as the information was provided by another party." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003); see also *Barnes*, 570 F.3d at 1100-1102; 47 U.S.C. § 230(c)(1). The CDA also provides that "no cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230 (e)(3).

Section 230(c)(1) reflected Congress's intent to foster the growth of the Internet and to prevent potential liability from stifling such growth. See 47 U.S.C. § 230(b). Whole categories of websites that we now take for granted and think of as indispensable — search engines such as Google

and Yahoo!, discussion boards and chat rooms, comments sections to blogs and articles, and social networking sites such as MySpace or Facebook — would have been snuffed out in their infancy if their operators could have been held liable for actionable third party speech appearing on their websites. As the Ninth Circuit has explained:

> As a matter of policy, Congress decided not to treat providers of interactive computer services like other information providers such as newspapers, magazines or television and radio stations, all of which may be held liable for publishing or distributing obscene or defamatory material written or prepared by others. Absent § 230, a person who published or distributed speech over the Internet could be held liable for defamation even if he or she was not the author of the defamatory text,...Congress, however, has chosen to treat cyberspace differently.

*Batzel v. Smith*, 333 F.3d 1018, 1026-1027 (9th Cir. 2003) (internal citation omitted); see also *Carafano*, 339 F.3d at 1122.

Congress chose to provide Internet websites with broad immunity because of "the volume of materials communicated through such intermediaries, the difficult of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech" if normal liability rules applied. *Universal Commc'n Sys., Inc. v. Lycos Sys.*, 478 F.3d 413, 419-420 (1st Cir. 2007). It recognized that, without a grant of broad immunity to Internet websites, the threat of liability would have an "obvious chilling effect" on website operators and would discourage them from permitting third party content. *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330-31 (4th Cir.

1997). The sheer volume of third-party content that can appear on a website, coupled with the difficulty (both practical and legal) of distinguishing between tortious and nonactionable speech, plus the lack of economic incentive to protect nonactionable speech, would have led websites to engage in over-censorship if not outright bans on third-party speech in order to avoid liability. *Id.*

B. *Courts Across The Country Have Applied Section 230 To Bar Claims Like The Claims In This Action*

Courts have "interpreted section 230 immunity broadly to effectuate Congress's 'policy choice...not to deter harmful online speech through the...route of imposing tort liabilities on companies that serve as intermediaries for other parties' potentially injurious messages." *Universal Commc'n Sys.*, 478 F.3d at 418 (quoting *Zeran*, 129 F.3d at 330-331). The broad immunity is interpreted "to protect websites not merely from ultimate liability, but from having to fight costly and protracted legal battles." *Fair Housing Counsel of San Fernando Valley v. Roomates. com. LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008) (en banc).

Any claim that seeks to hold Google responsible for content provided by a third party is barred by the CDA. See, e.g., *Doe v. Myspace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008), cert denied, 129 S. Ct. 600 (2008) ("parties complaining that they were harmed by a Web site's publication of user-generated content have recourse; they may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online."); *Green v. Am. Online,* 318 F.3d 465, 470-72 (3d Cir. 2003) (affirming dismissal of defamation and tort claims against

Internet service provider under § 230 arising out of defamatory statements prepared by third parties); *Carafano*, 339 F.3d at 470-72 (recognizing that the Ninth Circuit had "joined the *consensus* developing across other courts of appeals that §230(c) provides broad immunity for publishing content provided by third parties.") (emphasis added); *Zeran*, 129 F.3d at 330 ("By its plain language, § 230 creates a federal immunity to *any cause of action* that would make service providers liable for information originating with a third party user of the service."). (emphasis added)

Furthermore, courts have repeatedly held that, under the CDA, Internet service providers do not owe a duty to police the Internet, remove content, nor otherwise protect users from the speech of third parties. As the court of appeals for the Third Circuit held in *Green v. America Online,* 318 F.3d 465, 471 (3d Cir. 2003), where it unambiguously rejected an attempt to advance such a tort theory against an Internet service provider:

> There is no real dispute that Green's fundamental tort claim is that AOL was negligent in promulgating harmful content and in failing to address certain harmful content on its network. Green thus attempts to hold AOL liable for decisions relating to the monitoring, screening, and deletion of content from its network - actions quintessentially related to a publisher's role. Section 230 "specifically proscribes liability" in such circumstances.

*Id.* at 471 (quoting *Zeran*, 129 F.3d at 332-33). See also *Parker v. Google*, 242 Fed, Appx. 833, 838 (3d Cir. 2007) (agreeing with District Court that Section 230 bars negligence-type claims against Google for decisions

related to policing its network); *Ezra, Weinstein, & Co. v. Am. Online, Inc.*, 206 F.3d 980, 986 (10th Cir. 2000) (affirming dismissal of tort claims and holding that "Congress clearly enacted § 230 to forbid the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions."); *Langdon v. Google*, 474 F. Supp. 2d 622, 630-31 (D. Del. 2007) (dismissing claims "grounded upon the exercise of editorial discretion over internet content and editorial decisions" and holding that "section 230 provides Google, Yahoo!, and Microsoft immunity for their editorial decisions regarding screening and deletion from their network.").[12]

C. *Section 230(c)(1) Of The CDA Immunizes Google From Plaintiff's Claims, So This Complaint Should Be Dismissed With Prejudice*

Here, there is no dispute that Google is, as courts around the country have unanimously agreed, a "provider" of an "interactive computer service." See, e.g., *Langdon*, 474 F. Supp. 2d at 630 ("Google is considered an "interactive computer service' as contemplated by § 230."); *Novak v. Overture Servs.*, 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) (Google is a "provider or user of an interactive computer service" and subject to Section 230 immunity based on the face of the complaint).

---

12. In the complaint, plaintiff references *Cohen v. Google*, No. 100012/09 (N.Y. App. Div. 2009). Compl. ¶¶8,10. A copy of the *Cohen* court's order is attached hereto as Exhibit B. *Cohen* does not support any of plaintiff's claims. In order to bring an unrelated action against an anonymous blogger, the plaintiff in *Cohen* sought an order against a third party (Google) to obtain the name of the blogger who had allegedly defamed her on a website, *Id.* at 1. *Cohen* did not involve a claim against Google for monetary damages, nor does it stand for the proposition that Google is liable for postings created by a third party.

In addition, the complaint does not allege that Google has itself, as an entity, uttered a single objectionable statement regarding plaintiff.[13] So the allegedly harmful content in question originated not from Google but from a third party or "another information content provider". 47 U.S.C. § 230 (c)(1); Google Exh. A; Compl. Exh. B (showing web addresses for "libelous remarks" by third parties).

Because plaintiff's claims arise from the posting of content by "another information content provider" and not by Google, they fall squarely within the broad immunity afforded "provider[s]" of "interactive computer service[s]" by Section 230(c)(1) of the CDA. Thus, pursuant to the CDA, Google respectfully requests that this complaint be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, Google requests that the court sustain its preliminary objections to the complaint and dismiss this action with prejudice.