20-616
James Domen v. Vimeo, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: December 10, 2020                    Decided:  March 11, 2021)

Docket No. 20-616

_____

JAMES DOMEN, AN INDIVIDUAL, CHURCH UNITED, A
CALIFORNIA NOT-FOR-PROFIT CORPORATION,

*Plaintiffs-Appellants*,

v.                                                                          20-616-cv

VIMEO, INC., A DELAWARE FOR-PROFIT CORPORATION,

*Defendant-Appellee.*[1]

_____

Before: POOLER, WESLEY, and CARNEY, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the

Southern District of New York (Stewart D. Aaron, *M.J.*) dismissing plaintiffs'

---

[1] The Clerk of Court is directed to change the caption to the above.

claims alleging discrimination based on sexual orientation and religion under federal and state law. James Domen and Church United allege that Vimeo, Inc., discriminated against them by deleting Church United's account from its online video hosting platform. We agree with the district court that Section 230(c)(2) of the Communications Decency Act provides Vimeo, Inc., with immunity from suit and requires dismissal of Appellants' claims. Therefore, we AFFIRM the judgment of the district court.

_____

NADA N. HIGUERA, Tyler & Bursch, LLP (Robert H. Tyler, *on the brief*), Murrieta, CA, *for Plaintiffs-Appellants*.

MICHAEL A. CHEAH, General Counsel, Vimeo, Inc., New York, NY, *for Defendant-Appellee*.

Jean-Paul Jassy, Kevin L. Vick, Elizabeth H. Baldridge, Jassy Vick Carolan LLP, Los Angeles, CA (*on the brief*), *for Defendant-Appellee*.

Samuel C. Leifer, Patrick J. Carome, Ari Holtzblatt, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA and Washington, DC, *for The Internet Association, amicus curiae in support of Defendant-Appellee*.

POOLER, *Circuit Judge*:

Plaintiffs-Appellants James Domen and Church United allege that Vimeo, Inc., discriminated against them on the basis of their religion and sexual orientation by deleting Church United's account from Vimeo's online video hosting platform. The district court granted Vimeo's motion to dismiss on the ground that Section 230 of the Communications Decency Act ("CDA") immunizes Vimeo from this suit. The district court concluded that Vimeo deleted Church United's account because of Church United's violation of one of Vimeo's content policies barring the promotion of sexual orientation change efforts ("SOCE") on its platform. This policy, in turn, fell within the confines of the good-faith content policing immunity that the CDA provides to interactive computer services.

Section 230 figures prominently in the current discourse regarding the intersection of law and social media.[2] While lively debate on whether and how

---

[2] *See generally, e.g.*, Danielle Keats Citron & Benjamin Wittes, *The Internet Will Not Break: Denying Bad Samaritans § 230 Immunity*, 86 FORDHAM L. REV. 401 (2017); Benjamin Edelman & Abbey Stemler, *From the Digital to the Physical: Federal Limitations on Regulating Online Marketplaces*, 56 HARV. J. ON LEGIS. 141 (2019); Kate Klonic, *The New Governors: The People, Rules, and Processes Governing Online Speech*, 131 HARV. L. REV. 1598 (2018).

best to regulate interactive computer service platforms is ongoing, and experts, consumers, and businesses continue to propose a variety of solutions, Section 230 remains the governing statute. Moreover, its impact on this case is clear. Pursuant to Section 230(c)(2), Vimeo is free to restrict access to material that, in good faith, it finds objectionable. Appellants argue that Vimeo demonstrated bad faith by discriminating against them on the basis of their religion and sexual orientation, which they term "former" homosexuality; deleting Church United's entire account, as opposed to only the videos at issue; and permitting other videos with titles referring to homosexuality to remain on the website. However, Appellants' conclusory allegations of bad faith do not survive the pleadings stage, especially when examined in the context of Section 230(c)(2). Section 230(c)(2) does not require interactive service providers to use a particular method of content restriction, nor does it mandate perfect enforcement of a platform's content policies. Indeed, the fundamental purpose of Section 230(c)(2) is to provide platforms like Vimeo with the discretion to identify and remove what they consider objectionable content from their platforms without incurring liability for each decision. Therefore, we AFFIRM the judgment of the district court.

# BACKGROUND

These facts are taken from plaintiffs' amended complaint and are assumed true for this appeal.

James Domen is the president and founder of the non-profit organization Church United.[3] Domen alleges that he "was a homosexual" for three years but then, "because of his desire to pursue his faith in Christianity, he began to identify as a former homosexual." App'x at 47. Domen shares his story through Church United to connect with others in California who have had similar experiences. Church United was founded in 1994 and is a California non-profit religious corporation. It seeks to "equip pastors to positively impact the political and moral culture in their communities," and it has over 750 affiliated pastors. App'x at 47. The organization claims to "focus on the spiritual heritage of the United States" by attempting to connect with "nationally-known speakers, including elected officials . . . who vote to support a biblical worldview." App'x at 47.

---

[3] Because Domen is the president and founder of Church United and his claims are co-extensive with those of Church United, we refer to Domen and Church United together as "Church United" or "Appellants."

Vimeo is a Delaware for-profit corporation headquartered in New York. Founded in 2004, it provides an online forum that allows users to upload, view, and comment on videos. Videos hosted on Vimeo include music videos, documentaries, live streams, and others.

In October 2016, Church United created a Vimeo account to upload a variety of videos promoting the organization, including "videos addressing sexual orientation as it relates to religion." App'x at 49. They allegedly uploaded 89 videos over the following two years. At some point, Church United upgraded to a professional account, which requires a monthly fee in exchange for access to more features and bandwidth. On November 23, 2018, Vimeo e-mailed Domen, informing him that a moderator had marked the Church United account for review. The e-mail explained, "Vimeo does not allow videos that promote [SOCE]." App'x at 58. Vimeo instructed Church United to remove the videos and warned that if Church United did not do so within 24 hours, Vimeo might remove the videos or the entire account. It also instructed Church United to download the videos as soon as possible to ensure that the organization could keep them in the event Vimeo deleted the account. Church United claims that five of its videos were flagged as violating Vimeo's policies:

- Video One: a two-minute video where Domen explained "his life story, preferred sexual orientation, the discrimination he faced, and his religion." App'x at 49.

- Video Two: a promotion video for "Freedom March Los Angeles," allegedly an event where "former homosexuals" gather. App'x at 50.

- Video Three: an NBC-produced documentary segment about SOCE.

- Video Four: a press conference with "the founder of Desert Stream" relating to his religion and sexuality. App'x at 50.

- Video Five: an interview with a survivor of the attack on Pulse Nightclub in Florida in March 2018 and his background as a "former homosexual." App'x at 50.

Appellants allege that the videos were part of an effort by Church United to challenge a California Assembly bill proposing to expand the state's ban on SOCE to talk therapy and pastoral counseling.

On December 6, 2018, Vimeo deleted Church United's account, explaining: "Vimeo does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech." App'x at 60. Appellants allege that this is "censorship," App'x at 52, insofar as it barred Domen from speaking about his preferred sexual orientation and religious beliefs. They also allege that Vimeo allows similar videos to remain on its website with titles such as "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51. Based on these

allegations, Appellants claim that Vimeo violated the Unruh Act, a California law aimed at barring business establishments from intentionally discriminating on the basis of, inter alia, sexual orientation and religion; New York's Sexual Orientation Non-Discrimination Act; and Article 1, Section 2 of the California Constitution, which "mandates viewpoint neutral regulation of speech in public and quasi-public fora." App'x at 54.

The district court granted Vimeo's motion to dismiss pursuant to Federal Rule 12(b)(6). *See Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607-08 (S.D.N.Y. 2020). In doing so, the court concluded that all of Appellants' claims were preempted under both subsections (c)(1) and (c)(2) of Section 230 of the CDA.[4] The district court first concluded that Vimeo was acting as a "publisher" rather

---

[4] Although the word "immunity" is not found in the statute, many courts refer to Section 230 as providing immunity from any suit in which the plaintiff seeks to treat an interactive computer service as the publisher or speaker of information provided by another information content provider. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009). Section 230(e)(3) also expressly preempts state-law causes of action in the event of an "inconsisten[cy]" between such actions and Section 230. 47 U.S.C. § 230(e)(3); *see also Zeran v. Am. Online, Inc.*, 958 F. Supp. 1124, 1131 (E.D. Va. 1997), *aff'd*, 129 F.3d 327 (4th Cir. 1997). Since Section 230 establishes that "[n]o cause of action" that is "inconsistent" with the section's provisions may be brought, 47 U.S.C. § 230(e)(3), we refer to Section 230's protections as both effecting immunity from suit and preemption of certain state law actions.

than a speaker, triggering immunity under subsection (c)(1). *Id.* at 601-03. The district court acknowledged that the Second Circuit had not ruled on precisely this situation—where the plaintiffs sought to hold the defendant liable for removing content as opposed to permitting content to exist on its platform—but used the reasoning of other courts to conclude that this did not change the outcome. *Id.* at 602. The district court also concluded subsection (c)(2) required dismissal. *Id.* at 604. It reasoned that the videos promoted SOCE, violating Vimeo's legitimate content policy against SOCE, and Appellants' allegations suggesting Vimeo acted in bad faith were too conclusory to "nudge their claims across the line from conceivable to plausible." *Id.* at 604 (alteration omitted). The district court further decided that because Section 230 preempts state statutory claims and the California state constitutional claim, the entire case was statutorily barred. *Id.* at 604-06.

Next, the district court concluded that, even if the CDA did not bar all of Appellants' claims, Appellants failed to state any plausible legal claim. *Id.* at 606-07. As for the discrimination claims, there were no plausible allegations supporting the claim that Vimeo intentionally discriminated against Appellants on the basis of their sexuality or religion. *Id.* at 606. The district court also

9

concluded that Vimeo was not a state actor, so its actions did not implicate Appellants' free speech rights, requiring dismissal of the California constitutional claim. *Id.* at 606-07. Lastly, the district court denied leave to amend as futile. *Id.* at 607.

On appeal, Appellants argue that Section 230 of the CDA does not protect Vimeo's actions and that they stated a claim under state statutory discrimination law. They do not make any arguments regarding their state constitutional free speech claim in their opening brief and have therefore waived the ability to challenge it in this appeal. *See Gross v. Rell*, 585 F.3d 72, 95 (2d Cir. 2009).

**DISCUSSION**

We review a district court's grant of a motion to dismiss de novo, *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019), and denials of leave to amend for abuse of discretion, *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hernandez*, 939 F.3d at 198 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Congress enacted the CDA in the face of growing and widespread use of the internet. "[T]he primary purpose of the CDA was to protect children from sexually explicit internet content." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (footnote omitted). Section 230 is an amendment to the original law, enacted to "provide immunity for interactive computer services that make 'good faith' efforts to block and screen offensive content." *Id.* (citation, alteration, and some internal quotation marks omitted). Although "[w]e have had limited opportunity to interpret Section 230," our Circuit and others note "that Section 230 immunity is broad." *Id.*

Section 230 has two relevant subsections. The first provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C § 230(c)(1). The second governs "[c]ivil liability" and states that no provider or user of an interactive computer service shall be held liable for:

(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or

11

(B) any action taken to enable or make available to information content providers or others the technical means to restrict access to [the] material described . . . .

*Id.* § (c)(2). "In applying the statute, courts have broken it down into three component parts[.]" *LeadClick*, 838 F.3d at 173 (brackets and internal quotation marks omitted). The statute shields conduct if the defendant "(1) is a provider or user of an interactive computer service, (2) the claim is based on information provided by another information content provider and (3) the claim would treat the defendant as the publisher or speaker of that information." *Id.* (alterations and internal quotation marks omitted). A "publisher's traditional editorial functions" include "deciding whether to publish, withdraw, postpone or alter content." *Id.* at 174 (internal quotation marks omitted).

Appellants argue neither subsection of Section 230(c) applies. They contend that subsection (c)(1) is inapplicable because this lawsuit seeks to hold Vimeo liable for the enforcement of its own content policies, not for hosting user-generated content. They also argue that subsection (c)(2) is inapplicable because, in their view, Vimeo did not act in good faith. Vimeo argues that subsection (c)(1) immunity applies because the action involves content that it did not create, i.e., Appellants' videos regarding SOCE, and that, in any event, its enforcement of its

12

policy regarding SOCE qualifies for good faith protection under subsection (c)(2). It further argues that any allegations of bad faith are too conclusory to support rejection of its defense under subsection (c)(2). Regardless of whether a separate analysis might lead to the conclusion that subsection (c)(1) covers Vimeo in the circumstances alleged, we affirm the district court's dismissal on the ground that subsection (c)(2) immunizes Vimeo from suit.

A broad provision, subsection (c)(2) immunizes interactive computer service providers from liability for "any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected." 47 U.S.C § 230(c)(2). Notably, the provision explicitly provides protection for restricting access to content that providers "*consider*[] . . . objectionable," even if the material would otherwise be constitutionally protected, granting significant subjective discretion. *Id.* (emphasis added). Therefore, Vimeo is statutorily entitled to consider SOCE content objectionable and may restrict access to that content as it sees fit.

13

Moreover, the statute does not require providers to use any particular form of restriction. Although Appellants take issue with Vimeo's deletion of Church United's entire account as opposed to deleting only those videos promoting SOCE, nothing within the statute or related case law suggests that this took Vimeo's actions outside of the scope of subsection (c)(2) immunity. Indeed, Vimeo warned Church United that removal of the entire account was exactly what might happen if they ignored the warning. Church United received the warning and did not take the videos down or otherwise allay Vimeo's concerns. Vimeo was entitled to enforce its internal content policy regarding SOCE and delete Church United's account without incurring liability.

We also agree with the district court that Appellants' allegations that Vimeo acted in bad faith are too conclusory to survive a motion to dismiss under Rule 12(b)(6). Appellants' bases for arguing that Vimeo acted in bad faith are not commensurate with how courts interpret bad faith in this context. Appellants' cited cases do not satisfy their position. In *Zango, Inc. v. Kaspersky Lab, Inc.*, the Ninth Circuit considered whether the defendant's software—a filter blocking potentially malicious software from users' computers—qualified for Section 230 immunity in the same manner as platforms like YouTube or Facebook. 568 F.3d

14

1169, 1173-78 (9th Cir. 2009). The Ninth Circuit held that it did. *Id* at 1178. In *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, the Ninth Circuit limited the scope of *Zango*, clarifying that Section 230 "immunity . . . does not extend to anticompetitive conduct." 946 F.3d 1040, 1054 (9th Cir. 2019). There, the court reinstated the plaintiff's Lanham Act claim, which alleged that the defendant's firewall program improperly filtered out the plaintiff's rival firewall program, even though the plaintiff's program posed no actual security threat to users' computers. *Id.* at 1047-48. The plaintiff alleged that the defendant made "false and misleading statements to deceive consumers into choosing [the defendant's] security software over [the plaintiff's]." *Id.* at 1048. Vimeo's deletion of Appellants' account was not anti-competitive conduct or self-serving behavior in the name of content regulation. Instead, it was a straightforward consequence of Vimeo's content policies, which Vimeo communicated to Church United prior to deleting its account.

Appellants argue that bad faith is apparent from the fact that other videos relating to homosexuality exist on Vimeo's website. In support of this, Appellants point to titles of videos that allegedly remain on Vimeo's website: "Gay to Straight," "Homosexuality is NOT ALLOWED in the QURAN," "The

15

Gay Dad," and "Happy Pride! LGBTQ Pride Month 2016." App'x at 51.

However, the mere fact that Appellants' account was deleted while other videos

and accounts discussing sexual orientation remain available does not mean that

Vimeo's actions were not taken in good faith. It is unclear from only the titles

that these videos or their creators promoted SOCE. Moreover, one purpose of

Section 230 is to provide interactive computer services with immunity for

removing "some—but not all—offensive material from their websites." *Bennett v.*

*Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018). Given the massive amount of

user-generated content available on interactive platforms, imperfect exercise of

content-policing discretion does not, without more, suggest that enforcement of

content policies was not done in good faith. *See Zeran v. Am. Online, Inc.*, 129 F.3d

327, 331 (4th Cir. 2017) (explaining that "[t]he amount of information

communicated via interactive computer services is . . . staggering" and that

Congress passed Section 230 expressly to "remove disincentives for the

development and utilization of blocking and filtering technologies" (internal

quotation marks omitted)).

Ultimately, "Section 230(c)(2) immunizes from liability providers and

users of interactive computer service who voluntarily make good faith efforts to

restrict access to material they consider to be objectionable . . . ." *Green v. Am.*

*Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003). Here, Vimeo has done just that.

Appellants chose to ignore Vimeo's notice of their violation of Vimeo's content

policy, and, as a result, Vimeo deleted their account. By suing Vimeo for this,

Appellants run headfirst into the CDA's immunity provision, which "allows

computer service providers to establish standards of decency without risking

liability for doing so." *Bennett*, 882 F.3d at 1168 (brackets and internal quotation

marks omitted).

Moreover, the district court properly dismissed Appellants' claims at the

pleadings stage. "Section 230 immunity, like other forms of immunity, is

generally accorded effect at the first logical point in the litigation process[,] . . .

[and] immunity is an immunity from suit rather than a mere defense to

liability[;] it is effectively lost if a case is erroneously permitted to go to trial."

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009)

(italics and internal quotation marks omitted). Although the parties raised

additional arguments, there is no need to reach them.

17

**CONCLUSION**

We conclude that CDA Section 230(c)(2) immunizes Vimeo from this lawsuit, and the district court properly dismissed Appellants' claims. Accordingly, the judgment of the district court is **AFFIRMED**.